**STATE of Maine**

v.

**Walter C. FRANZEN.**

Supreme Judicial Court of Maine.

Argued May 6, 1983.

Decided July 1, 1983.

Michael E. Povich, Dist. Atty. (orally), Ellsworth, for plaintiff.

Paine & Lynch, Martha J. Harris (orally), John D. Bunker, Bangor, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

Walter Franzen was indicted for aggravated assault with the use of a dangerous weapon upon George L. Lunt under 17–A

M.R.S.A. § 208(1)(B), a Class B crime, and for criminal threatening with the use of a dangerous weapon of Frederick L. Linscott under 17–A M.R.S.A. § 209, a Class C crime. Following a jury trial in Superior Court (Hancock County), Franzen was found guilty of the charges and appeals from the convictions. We affirm the Superior Court judgment.

### Facts

Walter Franzen and George Lunt are neighbors in Trenton, Maine. For some time prior to the incidents which gave rise to the grand jury indictment in this case, there had been bad blood between the two men. On the evening of October 11, 1981, Lunt feared trouble with Franzen and asked his friend Linscott to come spend the night with him. Both sat out the evening in Lunt's house in the dark. Out drinking with a friend, Franzen did not return home till 1:00 or 1:30 o'clock the next morning. When shortly after returning home Franzen left his house and walked to the pole fence which divided Lunt's property from that of a neighbor, both Lunt and Linscott stepped outside and went in separate directions to observe what was to take place. Linscott testified that he saw Franzen, who was carrying a rifle, knocking down the poles of the fence and that, when asked what he was doing, the defendant fired two shots at him. Franzen, however, claims that he tripped over the fence and that the rifle discharged accidently as he was trying to get back on his feet. On hearing the shots, Lunt approached Franzen from behind the house and the two had words, which culminated in Lunt absorbing a "mil-

itary butt stroke" in the chest with the rifle, causing him to sustain a fractured rib. Lunt, a late septuagenarian, stated that, just before the blow, Franzen had threatened to kill him. The defendant, on the other hand, a former military officer fifty-five years of age, admitted that he did strike Lunt, but only after the latter tried to wrest the gun from his grasp.

### Motion to strike the entire jury panel and dismiss the indictment

 On the morning of the trial, the defendant made a motion to strike the entire jury panel and to dismiss the indictment on the ground that the defendant's wife, Trudy Franzen, who had been returned to the court as a prospective member of the jury panel for the criminal sessions at which her husband was to be tried, was allegedly unlawfully excused from service contrary to the statutory provisions regulating the same. The defendant's challenge to the array, based on noncompliance with statutory requirements respecting selection for, or exemption from, service on the jury panel, was timely made before trial. *See Christian v. State,* 268 A.2d 620, 625 (Me.1970). So far as the facts are concerned, it is undisputed that the clerk of the court had first notified the District Attorney that Mrs. Franzen was on the jury panel from which jurors would be selected for the trial of her husband. The clerk was told to consult with the presiding justice, who directed her to advise Mrs. Franzen not to report for jury duty. This, of course, was not in compliance with the provisions of 14 M.R.S.A. §§ 1213 and 1214.[1] Indeed,

---

1. The comprehensive statutory provisions relating to disqualifications and exemptions from jury service provide in pertinent part as follows:

 § 1211. A prospective juror is disqualified to serve on a jury if he: Is not a citizen of the United States, 18 years old and a resident of the county; is unable to read, speak and understand the English language; is incapable, by reason of his physical or mental disability, of rendering satisfactory jury service; but a person claiming this disqualification may be required to submit a physician's cer-

tificate as to the disability and the certifying physician is subject to inquiry by the court at its discretion; or has lost the right to vote because of a criminal conviction. The following persons are exempt from serving as jurors and their names shall not be placed on the list: The Governor, councilors, judges, clerks and deputy clerks of common law courts, Secretary and Treasurer of State, all officers of the United States, judges of probate, physicians and surgeons, dentists, sheriffs, counselors and attorneys at law.

except for her relationship of wife of the defendant and potential witness in the case, Trudy Franzen was not disqualified for jury service under 14 M.R.S.A. § 1211, nor was she expressly exempted from service thereunder. Nor, did the court purport to excuse her for undue hardship, extreme inconvenience or public necessity pursuant to 14 M.R.S.A. § 1213. When an attack is made on the whole panel, such as the defendant has mounted in the instant case, the burden of proof that the panel was in fact and in law illegally constituted and that prejudice resulted is on the party making the attack. *See State v. Christian,* 235 A.2d 294 (Me. 1967).

■ The court's unilateral pretrial excuse of Trudy Franzen from jury service was a proper exercise of judicial discretion and, rather than tainting the jury panel, served to protect it from the potential infectious influence of a prospective juror, a person sensible of bias, prejudice or particular interest in the very cause of her husband, commingling with the other jurors pending the selection of the particular panel for trial of the case. Since it was made to appear through competent source that the potential juror was the wife of the defendant Franzen, and that, as a matter of law, she did not stand indifferent in the cause of the State against her husband, it was proper for the court to exempt her from jury service under the circumstances of the instant case without motion or hearing. Section 1301 of title 14 provides that

> [t]he court, on motion of either party in an action, may examine, on oath, any person called as a juror therein, whether he is related to either party, has given or formed an opinion or is sensible of any bias, prejudice or particular interest in the cause. If it appears from his answers or from any competent evidence that he does not stand indifferent in the cause, another juror shall be called and placed in his stead.

Neither this section, nor section 1214 which provides that the procedures prescribed by that section are the exclusive means by which a person accused of a crime, the State or a party in a civil case may challenge a jury on the ground that the jury was not selected in conformity with the chapter, can be viewed to deprive the court of its own right to set aside or excuse a juror, once it has been ascertained that the particular juror was not or could not be expected to be impartial. *See State v. Williams,* 30 Me. 484, 485 (1849); *Snow v. Weeks,* 75 Me. 105, 106 (1883).

■ When a person, such as a juror, is required to be disinterested or indifferent in a matter in which others are interested, a relationship to one of the parties by consanguinity or affinity within the 6th degree

§ 1212. No qualified prospective juror is exempt from jury service.

§ 1213. A person who is not disqualified for jury service, section 1211, may be excused from jury service by the court only upon a showing of undue hardship, extreme inconvenience or public necessity, for a period the court deems necessary at the conclusion of which the person shall reappear for jury service in accordance with the court's direction.

§ 1214. Within 7 days after the moving party discovered or by the exercise of diligence could have discovered the grounds therefor, and in any event before the traverse jury is sworn to try the case, a party may move to stay the proceedings, and in a criminal case to dismiss the indictment, or for other appropriate relief, on the ground of substantial failure to comply with the provisions of this chapter for selecting the grand or traverse jury.

Upon motion filed under this section containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with such provisions, the moving party is entitled to present in support of the motion the testimony of ... the clerk, any relevant records and papers not public or otherwise available used by ... the clerk and any other relevant evidence. If the court determines that in selecting either a grand jury or a traverse jury there has been such a substantial failure, the court shall stay the proceedings pending the proper selection of the jury, dismiss an indictment or grant other appropriate relief.

The procedures prescribed by this section are the exclusive means by which a person accused of a crime, the State or a party in a civil case may challenge a jury on the ground that the jury was not selected in conformity with this chapter.

according to the civil law, or within the degree of 2nd cousins inclusive, will disqualify such person from service as a juror, but the objection to such juror, if known, must be made at or before trial. 1 M.R.S.A. § 71, as modified by 14 M.R.S.A. § 1303. *See State v. Fischer,* 238 A.2d 210, 215 (Me.1968); *State v. Bowden,* 71 Me. 89 (1880); *Hardy v. Sprowle,* 32 Me. 310 (1850). The court committed no legal error by excusing as juror the wife of the defendant upon its own initiative; this was an exercise of proper judicial discretion.

■ Furthermore, since there was not the slightest hint that the jury that did hear the appellant's case was in fact "sensible of bias and prejudice" against him or actually did not stand indifferent in the cause, Franzen's present claim of aggrievement based on the court's excuse of his wife from jury service must fail on appeal. *Christian v. State, supra,* at 625.[2]

### *Propriety of Prosecutor's Cross Examination*

During the course of the prosecutor's cross-examination, Franzen insisted that he did not think he was drunk on the particular night in question. In an attempt to cast doubt upon the defendant's memory of the events in the early morning hours of October 12, 1981, the prosecutor risked asking a question having reference to a statement given by the defendant to a probation officer during the presentence investigation ordered by the court following a Rule 11 proceeding and the acceptance at that hear-

2. The court's pretrial excuse of Mrs. Franzen made it possible for her to testify in her husband's case. See Rule 606(a), M.R.Evid, which provides:

 A member of the jury may not testify as a witness before that jury in the trial of the case in which he is sitting as a juror. If he is called so to testify, the opposing party shall be afforded an opportunity to object out of the presence of the jury.

3. The proposed disposition of the case under the plea agreement reached between the State and the defendant pursuant to Rule 11(e)(1)(C) or (D) was later rejected by the Court and

ing of the defendant's pleas of nolo contendere to the respective charges.[3]

> [Do you] [r]ecall ever making the following statement, quote: I admit I was under the influence and am not positive of all the events that took place?

At a bench conference, the defendant objected, pointing out that the particular statement to which the prosecutor had reference was privileged information not to be disclosed to anyone unless the defendant had already pleaded or had been found guilty.[4] Although the prosecutor argued that the form of the question did not disclose to whom the statement was made, the court ruled that the question was improper in that it may suggest some circumstance to the jury, the details of which the prosecutor could not legally present to the jury, but which the jury might be led to guess. The defendant's attorney requested the court to inform the jury that the objection to the question had been sustained and that they are to disregard anything about that question.

■ The trial justice complied with the defendant's request and stated formally before the jury:

> The record will reflect the last objection is sustained and the jury is to ignore the question.

The defendant's statement given to the probation officer in the course of a presentence investigation ordered by the court was, under Rule 32(c)(1), beyond disclosure to the jury. Furthermore, Rule 11(e)(5) in pertinent part provides that

> pursuant to Rule 11(e)(3) and (g) the defendant's pleas of nolo contendere were stricken and his pleas of not guilty reinstated.

4. Rule 32(c)(1) provides:

 The court may in its discretion direct the State Board of Probation and Parole to make a pre-sentence investigation and report to the court before the imposition of sentence or the granting of probation. *The report shall not be submitted to the court or its content disclosed to anyone unless the defendant has pleaded or has been found guilty.* (Emphasis added).

[t]he admissibility of evidence of a withdrawn plea of guilty or nolo contendere, or of offers or statements pertaining thereto, is governed by Rule 410 of the Maine Rules of Evidence.

And, under Rule 410, M.R.Evid., evidence of any statements made in connection with a plea of guilty later withdrawn is expressly made inadmissible in any civil or criminal proceeding against the person who made the plea. We can only view this trial confrontation as improper prosecutorial conduct on the part of the State's attorney. Nevertheless, we hold that the mere asking of the question in the instant case, even in the form in which it was done, accompanied by the immediate instruction to the jury that they are to ignore the question, as specifically requested by the defense attorney, did not constitute reversible error.

 In the first place, we note that no motion for mistrial was made at the time. We notice also that the question was never answered and, therefore, no error can be predicated on it (*see State v. Stack,* 441 A.2d 673, 678 (Me.1982)), and, furthermore, it must be presumed that the jury followed the trial court's immediate and specific admonition to ignore the stated question. *See State v. Kingsbury,* 58 Me. 238, 242 (1870); *State v. Fortin,* 106 Me. 382, 384, 76 A. 896 (1910); *State v. Cedre,* 314 A.2d 790, 795 (Me.1974). This Court generally will defer to the determination of a presiding Justice that a curative instruction will adequately protect against the jury's giving any consideration to a matter that a question asked might suggest, where the jury was told that the objection thereto was sustained. *See State v. Brown,* 410 A.2d 1033, 1037 (Me. 1980). Besides, Franzen did admit on the stand that his memory was affected by the amount of liquor he had had to drink.

### Jury Instructions

 The defendant at trial tendered six pages of requested instructions and, following the justice's charge, objected to several instructions as given. Initially, we must keep in mind that a party is not entitled to have his personal formulation of the law given to the jury, provided the jury is otherwise adequately instructed, a fact which our close scrutiny of this record plainly demonstrates in relation to all essential legal aspects of the case. *See Michaud v. Steckino,* 390 A.2d 524, 533–34 (Me.1978). The court's instructions provided the jury in logical sequence with all necessary definitions of the essential elements of the crimes charged, including the essential ingredients of the defenses of self-defense and intoxication, in terminology closely paralleling the explications of the Maine Criminal Code. We cannot presume that the jury was too ignorant to comprehend the law given to them in this case and to apply the same to the facts which it was within their province to find. *See State v. Trask,* 155 Me. 24, 151 A.2d 280, 283 (1959). We conclude that there was no error respecting jury instructions.

### Other Issues

The defendant raises several other issues in this appeal respecting evidentiary rulings and alleged improper prosecutorial tactics. Our review of the record convinces us that no reversible error was committed in these areas.

The entry will be:

Appeal denied.

Judgment of the Superior Court affirmed.

All concurring.