# CALDWELL *v.* STATE OF MARYLAND

[No. 73, September Term, 1975.]

*Decided January 8, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Stephen A. Tarrant, Assistant Public Defender,* for appellant.

*Albert Gallatin Warfield, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This case raises an important question concerning the admissibility of evidence in a rape case, where consent has been made an issue, of the reputation of the prosecutrix for chastity. We are asked to decide whether a witness may be permitted to testify that the prosecutrix has a reputation for chastity or lack of chastity in a community other than the one in which she resides. The circuit court ruled that evidence of reputation for chastity is limited to evidence of reputation in the neighborhood where the prosecutrix resides and therefore excluded, upon the state's objection, certain evidence offered by appellant. The Court of Special Appeals affirmed in an unreported per curiam opinion. *Arthur Fee Caldwell v. State,* [No. 725, September Term, 1974, filed June 4, 1975]. For the reasons stated herein, we hold that in a trial for rape where consent is at issue, the character of the prosecutrix for chastity or lack of chastity may be shown by proof of a general reputation for that trait in any substantial community of people among whom the prosecutrix is well-known.

A jury found appellant, Arthur Fee Caldwell, guilty of rape and assault and battery upon two women, Melody Tetrick and Madlyn Dennison. The evidence showed that on the night in question the two prosecuting witnesses and one Linda Novetski began hitchhiking from the One-Two-Three Club, a private night club at the Aberdeen Proving Ground military base where they had spent the evening, to their homes in Dundalk, about 30 miles distant. The testimony tended to show that the three women accepted a ride in appellant's car which was also occupied by two of his companions, one male and one female.

On the way, the group stopped at the apartment of the boyfriend of the female companion of appellant and all were invited in for a drink. Linda Novetski declined the invitation and hitchhiked home. The prosecuting witnesses, after remaining a short time, also began to leave and were then either forced or persuaded to return to the apartment where several attacks are alleged to have occurred.

## I

While denying that he ever had sexual relations with Melody Tetrick, appellant admitted having had intercourse with Madlyn Dennison but denied the use of any force. The sole defense, then, raised by appellant to the charge of raping Madlyn Dennison was her consent to the act.

In support of his claim, appellant offered the testimony of one Douglas Weeks, a U.S. Army sergeant and the night manager of the One-Two-Three Club during the period preceding the alleged attacks, and two other soldiers who had been stationed at Aberdeen and had often visited the club. Had he been permitted to do so, Sergeant Weeks would have testified that the prosecuting witnesses were known to him and that they were well-known at the One-Two-Three Club among the 22 or so members of the staff and among others who frequented the club. He would have further testified that the prosecuting witnesses had been coming to the club for a period of four years and that he was aware of their reputation for chastity among those who knew them by their association with the club. He would have testified that their reputation for chastity was "bad." The two other witnesses offered by the appellant would have testified similarly. None of the witnesses knew anything of the prosecuting witnesses' reputations in the community in which they resided.

There are several grounds upon which evidence of particular character traits of a witness may be admitted, that is, where the special probative value of such evidence outweighs its inherently prejudicial nature. Thus, the character of a rape-complainant for chastity or the lack thereof has, in a majority of common law jurisdictions, been

held admissible as tending to show that the act of intercourse, if committed at all, was with the consent of the prosecutrix. *See* 1 J. Wigmore, Evidence § 62 (3d ed. 1940); Annot., 140 A.L.R. 364, 380-82 (1942). So also in Maryland, the character of a rape-complainant for chastity has been held admissible as bearing on the issue of consent. *Johnson, Jr. v. State,* 232 Md. 199, 207, 192 A. 2d 506 (1963); *Giles v. State,* 229 Md. 370, 379-80, 183 A. 2d 359 (1962), *appeal dismissed,* 372 U. S. 767 (1963); *Humphreys v. State,* 227 Md. 115, 121-22, 175 A. 2d 777 (1961).

The most common method for proving character generally has, at least until now,[1] been to show the general reputation of the individual in that regard. *Wentz v. State,* 159 Md. 161, 166, 150 A. 278 (1930); *see* C. McCormick, Evidence § 44 (2d ed. 1972). At issue here is the traditional restriction placed on such reputation evidence that the testimony must be of the reputation of the person in the community in which he resides. *Markley v. State,* 173 Md. 309, 320, 196 A. 95 (1938); *see Allison v. State,* 203 Md. 1, 8, 98 A. 2d 273 (1953); *Bonaparte v. Thayer,* 95 Md. 548, 560, 52 A. 496 (1902); *Sloan v. Edwards,* 61 Md. 89, 103 (1883); *Knight v. House,* 29 Md. 194, 198 (1868).

The rule restricting the locality of reputation evidence to the community in which the person resides has received much criticism. The underlying purpose of any rule governing the admissibility of such evidence, of course, should be to assure that the reputation evidence received is that which best indicates the true character of the individual. It seems obvious that the character of a person is best known among those who know him best, those with whom he has had the most frequent and revealing contacts. The restrictive rule finds its origin in the assumption that those who best know the character of a person, indeed the only ones having a valid basis for assessing the character of

---

1. It remains to be seen what effect Maryland Code (1974) § 9-115, Courts & Judicial Proceedings Article, which permits a witness to give his personal opinion of the character of the one whose character is at issue upon a showing of an adequate basis for forming such an opinion, will have upon this proposition.

a person, are those who know him in the community in which he resides. This assumption, however valid in the period preceding the Industrial Revolution when the restrictive rule developed, can hardly be said to have retained its validity in the modern era in light of increasing urbanization and advances in communication and transportation. As Dean Wigmore noted:

> "In that type of community where the ordinary person's home is under the same roof as his store or workshop, or where the stores, workshops, offices, and homes are all collected within a small village or town group, and one's working associates are equally the neighbors of one's home, there is but one community for the purpose of forming public opinion, and there is but a single capacity in which the ordinary person can exhibit his character to the community. In other words, he can there have but one reputation. But in the conditions of life today, especially in large cities, a man may have one reputation in the suburb of his residence and another in the office or the factory at his place of work . . . ." 5 J. Wigmore, Evidence § 1616 (3d ed. 1940).

Because the best evidence is no longer to be found, necessarily, in the reputation one enjoys in the place of residence, a great number of jurisdictions have abandoned the restrictive rule. Annot., 112 A.L.R. 1020, 1022-27 (1938). The New York Court of Appeals, in rejecting the restrictive rule, observed that:

> "In large municipalities . . . where people now very largely dwell in tenements and apartment houses, a man may be entirely unknown in the community where he resides. It is not infrequent for a man to live in one building for years without knowing his neighbors, or anything about them. The only place where he can make a reputation, good or bad, is among his associates in his particular activities or in the personal contacts of his life where he actually

lives it." *People v. Colantone,* 243 N. Y. 134, 152 N. E. 700, 702 (1926).

*See also People v. Schmidt,* 79 Cal. App. 413, 249 P. 832, 834 (1926).

We agree that valuable evidence of the character of a person may be found in the reputation he enjoys in a community other than that in which he resides. Our decision today is expressly limited to the admissibility of reputation evidence with respect to the character of a rape-complainant for chastity, since this is the precise issue before us. Indeed, we are aware of no case in Maryland explicitly deciding this issue in a rape case. We hold, therefore, that evidence which tends to show the general reputation of the prosecutrix in a rape case for chastity among any substantial community of persons who have had opportunity regularly and for a sufficient period of time to observe her may, in the discretion of the court, be admissible when consent is at issue, without regard to the locale of those opportunities for observation. *See State v. McEachern,* 283 N. C. 57, 194 S.E.2d 787, 793 (1973).

The trial judge shall, in each case, exercise reasonable discretion in determing whether the reputation sought to be proved meets the standard. *State v. Kelly,* 131 Vt. 582, 312 A. 2d 906, 909 (1973); C. McCormick, Evidence, *supra.* It should be noted that while a person has only one character, absent some unusual mental defect, he may have more than one reputation. He may have one reputation in the community where he resides, another among those with whom he conducts his business, and yet another among those with whom he spends his free time. Each circle of acquaintances may be separate and distinct from the other; yet each, if it meets the criteria set out here, may be admissible as tending to show a person's character.

In the case at bar, the trial judge, in the exercise of his reasonable discretion, could have determined that the proffered testimony of Sergeant Weeks and the others met the standard. The prosecuting witnesses were well-known among an apparently substantial number of people — those who frequented the club — who had regular opportunities

over a four year period to observe them. Therefore, because consent was an issue with respect to the alleged rape of Madlyn Dennison, that conviction must be reversed. Since appellant denied ever having had sexual relations with Melody Tetrick, however, consent was not an issue with respect to her claim of rape and therefore evidence of her reputation for lack of chastity was irrelevant. The exclusion of such evidence, then, was not, as to her charge, erroneous and that conviction stands.

## II

Appellant also argues that the trial court committed error by improperly limiting the scope of cross-examination of the prosecuting witnesses. The trial judge ruled that defense counsel could not question the prosecuting witnesses with regard to their accusations, not brought out in direct examination, of rape against two other men alleged to have occurred contemporaneously with the attacks at issue here.

Under the prevailing rule, cross-examination is restricted to the points on which the witness testified on direct examination. *Plank v. Summers*, 205 Md. 598, 607, 109 A. 2d 914 (1954). And while this rule is not applied so as to limit cross-examination of the witness to specific details brought out on direct examination, "but permits full inquiry into the subject matter entered into," *Williams v. Graff*, 194 Md. 516, 522, 71 A. 2d 450 (1950), the scope of cross-examination, as appellant concedes, is a matter which rests largely within the reasonable discretion of the trial judge. *Shupe v. State*, 238 Md. 307, 310, 208 A. 2d 590 (1965); *Wells v. State*, 236 Md. 381, 388, 203 A. 2d 912 (1964); *Lloyd v. State*, 219 Md. 343, 349, 149 A. 2d 369, *cert. denied*, 359 U. S. 1014 (1959).

We are not persuaded that the trial judge abused his discretion in this case. The evidence of crimes which may have been committed by others, albeit contemporaneously with the crimes for which appellant was charged, bore no direct relation to the matters brought out on direct examination, except as it might have tended to show an application of overwhelming force by someone other than the appellant. Here, the trial court permitted cross-

examination limited to evidence of force or threats of force applied by others. The argument of appellant that had he been permitted to expand the scope of cross-examination, he might have been able to find inconsistencies in the testimony of the two prosecuting witnesses and thus impeach them is without substantial merit. *See Smith v. State*, 273 Md. 152, 158, 328 A. 2d 274 (1974).

> *Judgment affirmed in criminal No. 4866; in criminal No. 4867, judgment of Court of Special Appeals reversed, and case remanded to that court with instructions to reverse judgment of Circuit Court· for Harford County and to remand for a new trial; costs to be paid by Harford County.*