2001 ME 35

**STATE of Maine**

v.

**Martin G. CYR.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 20, 2000.

Decided: Feb. 21, 2001.

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Atty., Darcie McElwee, Asst. Dist. Atty., James S. Nixon, Esq., Gross, Minsky & Mogul, P.A., Bangor, for State.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Martin G. Cyr appeals from the judgment entered in the Superior Court (Penobscot County, *Mead, J.*) on a jury verdict finding him guilty of one count of assault in violation of 17–A M.R.S.A. § 207 (1983).[1] Cyr argues that the court erred by granting the State's motion in limine to exclude testimony regarding specific acts of untruthfulness that the complaining witness had committed in the past and her reputation for untruthfulness in the community. We disagree and affirm the judgment.

[¶ 2] The relevant facts may be summarized as follows: Cyr's estranged wife, Aimee Cyr, testified at trial that, on the night of September 16, 1999, Cyr arrived at her house to visit their children for the weekend and that he argued with her about divorce. In the course of the argument, she maintains, Cyr physically assaulted her. The next morning, Aimee's cousin reported the incident to the police. Aimee initially did not cooperate with authorities, indicating that she did not want the children to witness Cyr's arrest. Because she feared that Cyr would take their children to his home in Vermont, Aimee told the investigating officer that she would not press charges unless Cyr failed to return their children on Sunday. After the Officer explained that he would proceed with or without Aimee's help, she denied that Cyr had assaulted her and begged the officer not to arrest Cyr that day because the children had been through enough.

[¶ 3] At trial, Cyr intended to call Peter Rouleau, Lynn Beaulier, and Andrea Wiley as witnesses to discredit Aimee's allegations. After voir dire examination, however, the court, without specifying any particular basis for its decision, granted the State's motion in limine to exclude the testimony. Peter Rouleau, Aimee's former boyfriend, would have testified that, approximately eight years before trial, Aimee claimed that she had been raped by another man while Peter was working onboard a ship in the Great Lakes, but that she decided not to press charges in the case after he returned to her. He would have also testified that, a year later, Aimee falsely accused him of giving her a black eye, threatening to press charges if he did not pay her $5000 as an informal "alimony" for the time that she had not worked while they were living together. Lynn Beaulier, the mother of Aimee's high

---

1. Section 207 provides, in pertinent part, that "[a] person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another." 17–A M.R.S.A. § 207.

The court sentenced Cyr to ninety days in the county jail, with all but seven days suspended, and two years of probation.

school boyfriend, would have testified that when Aimee was in high school, twelve years before trial, she had accused her son of assault only to dismiss the charges before proceedings began in the juvenile court. Finally, Andrea Wiley, Aimee's former friend, would have testified that Aimee does not have a good reputation for truthfulness in the community.

## I.

[¶ 4] Cyr argues that the court erred by excluding the testimony relating to specific instances of Aimee's lying in the past because it was admissible, under Rule 404(b) of the Maine Rules of Evidence, to show that it was Aimee's plan or *modus operandi* to fabricate an assault charge and then use the judicial process to leverage a desired result in her relationship with Cyr. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." M.R. Evid. 404(b). Nonetheless, this provision "does not exclude the evidence when offered for another purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* advisers' note. We review the trial court's determination whether the evidence is relevant for some purpose other than propensity for clear error. *State v. DeMass,* 2000 ME 4, ¶ 11, 743 A.2d 233, 236.

[¶ 5] In the present case, the proffered testimony relates to three instances from the distant past when Aimee allegedly claimed to have been assaulted. None, however, establishes a plan or *modus operandi* to fabricate an assault charge in order to use the judicial process for her personal advantage. Lynn Beaulier would have testified that when Aimee was in high school, twelve years before trial, she had accused her son of assault but then dropped the charge before trial. In Beaulier's opinion, Aimee's allegations were false. Her testimony, however, does not indicate that Aimee attempted to gain any advantage by making the allegations. Likewise, Peter Rouleau would have testified that, approximately eight years before trial, Aimee decided not to press charges against a man that she claimed had raped her. At the time, Rouleau was working on the Great Lakes and could only spend one-half of a day every two weeks with Aimee. Although Cyr maintains that this testimony demonstrates that Aimee concocted the charges so that she could induce Rouleau to spend more time with her, the record offers no support for his conclusion. Rouleau did not testify that Aimee's claims were false. Furthermore, when asked if he knew whether Aimee's desire to spend more time with him had played any part in her claiming to be raped, Rouleau responded only that he believed that Aimee would have liked to spend more time with him. The only incident reported in the proffered testimony in which Aimee allegedly made a false accusation in order to gain some personal advantage occurred seven years prior to the trial when Rouleau claimed that Aimee falsely accused him of giving her a black eye and threatened to press charges if he did not pay her $5000 as informal "alimony." This incident, however, does not inexorably support Cyr's theory because there is no evidence that Aimee used the judicial process. Even though Rouleau refused to pay the money, Aimee did not file charges. The testimony, at best, evidences only an empty threat made long before the events of the present case. Under the circumstances, we cannot say that the court clearly erred or abused its discretion in excluding the testimony.

## II.

[¶ 6] Cyr also argues that the court erred by excluding testimony regarding Aimee's reputation for untruthfulness in the community. Rule 608(a) provides that "[t]he credibility of a witness may be attacked or supported by evidence of reputation" relevant to his or her "char-

acter for truthfulness or untruthfulness." M.R. Evid. 608(a). The rule permits reputation testimony on the assumption that the collective judgment of a significant group of diverse people regarding the character of a person that they each know is reliable. 28 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6114 (1993). Accordingly, reputation testimony must "embody the collective judgment of the community and be derived from a group whose size constitutes an indicium of inherent reliability." *State v. Mazerolle*, 614 A.2d 68, 73 (Me.1992) (quotations omitted). The judgment of a group that is too small or insular does not demonstrate the requisite reliability because its conclusion may be the product of no more than "a handful of people who coincidentally share the same opinion as to the credibility of the witness" and who may have formed their opinions "based on the same set of biases." WRIGHT & GOLD, *supra.*

[¶ 7] We leave it to the trial court to exercise its discretion in determining the reliability of proffered reputation testimony, and we will overturn its decision to admit or exclude such evidence only when it has abused its discretion. We have held that a trial court did not abuse its discretion by excluding the testimony of a witness who claimed that six people had told the witness to stay away from the individual and that several others had told the witness that the individual was not very honest. *Mazerolle*, 614 A.2d at 73. Likewise, in *State v. Doherty*, 437 A.2d 876 (Me.1981), we explained that a community of two or three people is insufficiently broad "to insure that its collective judgment about the defendant's character is reliable." *Id.* at 878.

[¶ 8] In the present case, Cyr contends that the testimony offered by Peter Rouleau, Lynn Beaulier, and Andrea Wiley is sufficient to establish Aimee's reputation for untruthfulness in the community. Rouleau and Beaulier, however, did not testify regarding Aimee's reputation.

Rather, they related only their own opinions of her truthfulness. Rule 608(a), unlike its federal counterpart, does not permit character evidence in the form of the witness' own opinion. *Compare* Fed. R.Evid. 608(a) *with* M.R. Evid. 608(a).

[¶ 9] Andrea Wiley was the only witness to testify that Aimee does not have a good reputation for truthfulness in the Millinocket area. It is readily apparent from the record, however, that her testimony, at best, reflects only the collective judgment of a relatively small and discrete group of friends. Wiley explained that the basis for her testimony was that she and a "few friends" had caught Aimee telling "stupid stories that [she] would make up" about her interest in and involvement with "boys" that the friends had dated. This testimony does not reflect the collective judgment of a sufficiently large and diverse group whose conclusion manifests the "indicium of inherent reliability" that is demanded of reputation testimony. *See Mazerolle*, 614 A.2d at 73. The court, therefore, did not abuse its discretion by excluding the testimony.

The entry is:

Judgment affirmed.